UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARY LEE BARNETT, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:12CV373 CDP |
| | ) |
| DETECTIVE MARC WASEM, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

Plaintiffs are the survivors of a man who was shot and killed by a police officer. They bring suit against the officer and the members of the Board of Police Commissioners under federal and state law. Defendants have filed a motion for summary judgment. I conclude that the officer is not entitled to qualified immunity and that genuine disputes of fact preclude summary judgment on the substance of the claims.

## Background

Normane Bennett was shot six times by St. Louis Metropolitan police detective Marc Wasem and died of those injuries. Bennett's mother and father, Mary Lee Barnett and Norman Robert Bennett, bring suit against Wasem for battery under Missouri law and for violations of his Fourth and Fourteenth

Amendment rights under 42 U.S.C. § 1983.  They also sue the Board of Police Commissioners and individual board members under § 1983 for failure to train, supervise, and discipline Wasem.  Defendants have filed a motion for summary judgment.  They seek judgment for Wasem in his individual capacity and alternatively argue that he is entitled to judgment on the merits and under qualified immunity.  Defendants also seek summary judgment against the Board and its members, arguing that plaintiffs have not shown any evidence that could lead to a recovery for municipal liability.  Finally, defendants argue that the court should not exercise jurisdiction over the state-law battery claim and, alternatively, that the claim is barred by official immunity and the public duty doctrine.

## Section 1983 Claims against Wasem

Defendants' argument that the complaint does not plead claims against Wasem in his individual capacity is wrong.  In more than one place, the complaint seeks relief against "Wasem, acting individually."  Plaintiffs sufficiently plead the Section 1983 claim against Wasem in his individual capacity.

In support of the argument for qualified immunity, Wasem provided evidence to show the following facts:  He and his partner were conducting automobile surveillance of suspected narcotic sales when they saw Bennett conducting hand-to-hand transfers.  The detectives, wearing raid vests that read "POLICE," exited their vehicles, announced "police," and saw Bennett "clench his

front waist band area" and run.  Wasem gave chase and saw Bennett attempt to throw something from his pocket that looked like marijuana.  He caught up to Bennett and attempted to handcuff him, but Bennett struggled and escaped into an alley.  Wasem turned the corner into the alley and saw Bennett holding a large silver revolver.  Wasem drew his service pistol.  Bennett began turning to face Wasem and raised the revolver.  Wasem twice ordered, "Drop the gun," but Bennett continued to raise the revolver.  Wasem fired his pistol at Bennett six times.  Bennett did not drop the revolver and was still facing Wasem, who fired again.  Bennett turned, fell to the ground, and dropped the revolver to his side in the grass.

Plaintiffs have provided affidavits of eight witnesses who tell a very different story.  Although they generally agree that Bennett struggled with Wasem and ran, all eight state that they saw Bennett either before or during the shooting and that he was not carrying a gun.  Three state that they saw the events and did not see him throw a gun.  Three state that they saw the events and did not hear Wasem say "drop the gun."  Five witnesses say they saw Wasem shoot Bennett in the back while he was lying on the ground.  For purposes of the qualified immunity analysis, I must view the facts in the light most favorable to plaintiffs, so I must assume that these facts – and not those provided by Wasem – are true.  *See Robbins v. Becker*, 715 F.3d 691, 694 (8th Cir. 2013).

Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). Qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). To determine whether an unreasonable search or seizure occurred, courts apply the Fourth Amendment's reasonableness standard. *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). The reasonableness is viewed from the vantage of the officer at the time of the seizure. *Gill v. Maciejewski*, 546 F.3d 557, 562 (8th Cir. 2008).

Defendants argue that Wasem's use of force (shooting Bennett) was reasonable because Bennett had run from the police, had struggled to avoid being handcuffed, had ignored warnings to drop a gun, and was in the process of raising a loaded .357 revolver. As discussed above, several witnesses state that Bennett was unarmed and Wasem did not call for him to drop a gun before firing on him. Some witnesses also saw Wasem shoot Bennett in the back after he was lying on the ground. A question of fact exists as to whether Bennett was armed and,

therefore, as to whether Wasem's actions were objectively reasonable. *See Nance v. Sammis*, 586 F.3d 604, 611 (8th Cir. 2009).

Defendants argue that they are nonetheless entitled to summary judgment, because there is no prohibition against using deadly force against a fleeing suspect where an officer has probable cause to believe the suspect poses a threat of serious bodily harm to the officer. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985). However, where a suspect does not pose such a threat, an officer is constitutionally prohibited from using deadly force to stop the suspect's escape. *Id.* ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."). Again, the evidence presented by plaintiffs shows a genuine dispute of fact that precludes summary judgment.

## Section 1983 Claims against the Members of the Board of Police Commissioners

The Eighth Circuit Court of Appeals recently described the contours of municipal liability:

> A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an action pursuant to official municipal policy or misconduct so pervasive among non-policymaking employees of the municipality as to constitute a custom or usage with the force of law. To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge

> of prior incidents of police misconduct and deliberately failed to take remedial action.  A plaintiff must establish (1) a continuing, widespread, persistent pattern of unconstitutional misconduct by the municipality's employees, (2) to which policymaking officials were deliberately indifferent or which policymaking officials tacitly authorized after notice to the officials of that misconduct, and (3) that custom of deliberate indifference or tacit authorization was a moving force behind the constitutional violation.  A city will be liable only where a city's inaction reflects a deliberate indifference to the constitutional rights of the citizenry, such that inadequate training or supervision actually represents the city's 'policy.'

*Doe ex rel. Doe v. Gay*, 719 F.3d 679, 686–87 (8th Cir. 2013) (internal quotations and citations omitted), *reh'g en banc granted*.

Plaintiffs have pointed to documents showing that Wasem has been involved in a number of other shots-fired incidents, and that studies have shown the police department systematically disregards reports of excessive force.  Although it is not clear that this evidence will be admissible at trial, I believe, under the factual and procedural posture of this case, that summary judgment should be denied on the claims against the members of the Police Board.  Plaintiffs have pointed to evidence that, assuming a proper foundation is laid at trial, may create a genuine issue concerning the police department's policies and practices regarding investigating allegations of unjustified shootings, and regarding supervision of officers.  Whether plaintiffs will be able to present sufficient admissible evidence at trial to show the necessary deliberate disregard for the rights of citizens remains

to be seen, but plaintiffs have pointed to sufficient evidence to survive summary judgment.

### Battery Claims against Wasem

Wasem argues he is entitled to summary judgment on the plaintiffs' battery claims because he is immune from suit under the public duty doctrine and by official immunity. While the public duty doctrine protects against an officer's negligent acts, it does not shield against intentional tort claims like battery. *See Brown v. Tate*, 888 S.W.2d 413, 316 (Mo. Ct. App. 1994) ("The public duty doctrine holds that a public official, or a public employee, may not be held liable to a person injured by his negligence in the performance of his public duty, because his duty is owed only to the general public, and not to the person injured.").

"Under Missouri law, the doctrine of official immunity protects public officials from civil liability for injuries arising out of their discretionary acts or omissions performed in the exercise of their official duties." *McLean v. Gordon*, 548 F.3d 613, 617 (8th Cir. 2008). "Official immunity does not, however, shield officials for liability arising from their negligent performance of ministerial acts or functions." *Id.* (citing *James ex rel. James v. Friend*, 458 F.3d 726, 731 (8th Cir. 2006)).

Discretionary acts require "the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or

pursued." *Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984) (quoting *Jackson v. Wilson*, 581 S.W.3d 39, 43 (Mo. Ct. App. 1979)). A ministerial act is one "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id*. The analysis of the act in question "must be determined by the facts of each particular case after weighing such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity." *Kanagawa v. State*, 685 S.W.2d 831, 836 (Mo. banc 1985).

"However, 'official immunity does not apply to discretionary acts done in bad faith or with malice.'" *Scherrer v. City of Bella Villa*, 4:07-CV-306(CEJ), 2009 WL 440484, at *6 (E.D. Mo. Feb. 20, 2009) (citing *Blue v. Harrah's N. Kan. City*, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005)). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Blue*, 170 S.W.3d at 479 (citations and quotations omitted). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Id*.

As discussed above, Plaintiffs have cited evidence that Wasem shot an unarmed man five times and then fired a sixth shot into his back as he lay on the ground. These facts create a genuine issue about whether Wasem acted in bad faith or with malice and thereby preclude him from claiming official immunity.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [# 34] is denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 4th day of September, 2013.