UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARY LEE BARNETT, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 4:12CV00373 CDP |
| | ) | |
| MARC WASEM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' TRIAL BRIEF**

Defendants respectfully submit the following trial brief:

**I.   Introduction**

Defendants expect that the evidence at trial will be as follows: In 2010, detectives Marc Wasem and Joseph Busso were working as detectives in the Violent Offenders' Unit of the St. Louis Metropolitan Police Department. The 3800 block of Sherman Place in the city of St. Louis is known to have street level narcotic sales and gang activity. On June 25, 2010, at 7:25p.m., detectives Wasem and Busso drove to Sherman Place to conduct surveillance because they were investigating gang members selling narcotics. Detective Wasem was driving and detective Busso was the passenger. The detectives pulled their vehicle up to a house on Sherman Place. The evidence will be that detective Wasem saw what he thought was some type of hand-to-hand

1

transfer on Sherman Place.  A suspect, later identified as Normane Bennett (plaintiffs' decedent), was conducting the hand-to-hand transfers.  The detectives were wearing plain clothes with raid vests that read "Police" in large print on the front and rear.   Detectives Wasem and Busso got out of their vehicle to conduct field interviews and investigate the suspicious activity.  They did not have their weapons drawn.  Detective Wasem announced "Police" and saw Bennett clench his front waist band area and run away.  Detective Wasem believed Bennett was attempting to conceal an unknown item or weapon so he ran after him.  Bennett lost his footing and fell in a muddy area.  As Bennett fell, he was attempting to pull something from his jean pocket that appeared to be marijuana.  Detective Wasem ordered Bennett to show his hands and advised him he was under arrest.  Bennett did not comply with the command and began resisting arrest.  Detective Wasem tried to handcuff Bennett to take him into custody for the observed violation.  Bennett's mother and sister intervened while Wasem was trying to handcuff Bennett.  Detective Wasem was unable to handcuff Bennett so Bennett escaped his grasp and got up.  Bennett ran to the front porch of 3851 Sherman Place.  After reaching the porch, he jumped over the wood railing and landed on the grass.  He returned to his feet and continued running.  Bennett ran through a vacant field toward the alley.  Detective Wasem followed him.  Bennett changed direction and ran west into an alley.

Bennett ran around a telephone pole and a dumpster and detective Wasem ran after him following him into an alley. Detective Wasem saw that Bennett had a large silver revolver in his right hand. Believing there was an immediate threat of serious physical harm, detective Wasem drew his department-issued pistol from his holster. Bennett slowed down and began to turn toward detective Wasem's direction raising the revolver. Bennett did not comply with orders to "drop the gun" and he continued raising the gun. Fearing for his safety, detective Wasem fired shots from his revolver striking Bennett. Once Bennett was no longer a threat, detective Wasem holstered his weapon and contacted the police dispatcher advising of the incident and requesting assistance and the need for emergency medical services for Bennett.

**II. The evidence will show that the amount of force used was reasonable under the circumstances**

A. <u>Force used was not excessive</u>

A police officer's use of that amount of force reasonably necessary to apprehend a suspect does not violate the Fourth Amendment. <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular

situation." Id. at 396-97. The objectively reasonable standard is viewed from the vantage point of the police officer at the time of arrest or seizure. Wertish v. Krueger, 433 F.3d 1062, 1066 (8th Cir. 2006). Defendants anticipate that the evidence, summarized in I., will demonstrate that detective Wasem's actions were reasonable in light of the facts and circumstances he confronted. The evidence will demonstrate that detective Wasem's use of force was reasonably necessary to prevent death or serious physical harm to himself or others.

   B.  <u>Detective Wasem is entitled to qualified immunity</u>

Police officers are immune from civil liability under § 1983 even if their conduct is ultimately found to have violated the Constitution, where "the unlawfulness of the officers' conduct… was not clearly established" at the time of their actions. Pearson v. Callahan, 555 U.S. 223 (2009). "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" Id. at 822 (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)). See also, Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

For the reasons stated above, no reasonable police officer finding himself in the situation that confronted defendant Wasem would have thought that his actions violated Bennett's clearly established constitutional rights. To the contrary, the law was clearly established in 2010 that the

4

Fourth Amendment is not violated because a police officer's use of that amount of force reasonably necessary does not violate the Constitution. Graham, 490 U.S. at 396. Police officers "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004).

**III. The St. Louis Board of Police Commissioners has no liability**

As an initial matter, "[i]n order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir. 2005). If the jury does not find detective Wasem liable for excessive force, it follows that the Board cannot be held liable. Id.

Defendants believe the evidence will not show any Board "policy" or "custom" of encouraging or tolerating "excessive force." To the contrary, the evidence will show that the Board has explicit policies governing the use of force. These policies do not advocate, approve, or permit so-called "excessive force." Plaintiffs have not established that the alleged excessive force was part of an official policy of the Board. With regard to custom, the evidence will not show that (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by Board employees; (2) deliberate indifference to or tacit authorization of such conduct by Board members after

5

notice to them of that misconduct; and (3) that the plaintiffs were injured by acts pursuant to the Board's custom. Ware v. Jackson County, Mo., 150 F.3d 873, 880 (8th Cir. 1998)(quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).

With regard to the failure to supervise or train, the evidence will not show that the Board failed to train or supervise detective Wasem. Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997). The evidence will show the training and supervision that detective Wasem received. The evidence will show that the police department investigates all police-involved shootings. Once that investigation is complete, the actions of the officer are reviewed by the Internal Affairs Division. The evidence will show that the Internal Affairs Division investigated this use of force. After IAD completed its investigation, the matter was referred to the Board. The Board received information pertaining to the shots fired report before the Board meeting. The Board concurred in the decision of the Internal Affairs Division and the leadership of the department that detective Wasem's actions were consistent with the Use of Force policy. Thus, the Board is not liable.

"Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Board of

6

County Comm'rs v. Brown, 520 U.S. 397, 405 (1997). The Board will present evidence that it is focused on improving how things are handled in the department in order to make the department run smoother and be more efficient. The evidence will fall short of showing that the Board was deliberately indifferent to Bennett's constitutional rights. Lund v. Hennepin County, 427 F.3d 1123, 1125 (8th Cir. 2005).

**IV. State law battery claim against detective Wasem fails**

The evidence will show that detective Wasem exercised discretion in determining what level of force he needed to employ in this tense and emergency situation. Detective Wasem exercised his discretion based on his experience and training when he perceived that Bennett had a gun and was raising it in his direction. Accordingly, the decision was discretionary, defendant Wasem is entitled to official immunity. Further, the evidence will show that Detective Wasem did not act with malice. For these reasons, the evidence does not support an exception to official immunity or under the public duty doctrine.

**V. Plaintiffs cannot meet the standard for an award of punitive damages**

The evidence will show that plaintiffs are not entitled to any damages, including punitive damages. At a minimum, plaintiffs cannot meet the standard for an award of punitive damages. In a Section 1983 action,

7

punitive damages can only be awarded when "a defendant's conduct is shown to be motivated by evil motive or intent, when it involves reckless or callous indifference to the federal protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1981). If a state official's conduct is neither egregious nor prompted by evil motive, punitive damages should not be imposed. Coleman v.Rahija, 114 F.3d 775, 788 (8th Cir. 1997); Cornell v. Woods, 69 F.3d 1383 (8th Cir. 1995). Further, plaintiffs are not entitled to punitive damages for their state claims without clear and convincing proof that defendant's conduct was outrageous because of defendant's evil motive or reckless indifference to Barnett's rights. Rodriquez v. Suzuki Motor Corp., 936 S.W.2d 104 (Mo. banc. 1996).

Respectfully submitted,

**CHRIS KOSTER**
Attorney General

*/s/ Dana W. Tucker*
Dana W. Tucker, # 43273MO
Denise G. McElvein, # 45227MO
Assistant Attorneys General
P.O. Box 861
St. Louis, Missouri 63188
(314)340-7861
Fax: (314)340-7029
*Attorneys for Wasem, St. Louis Board of Police Commissioners, Battle-Turner, Gray, Irwin and Slay*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 10, 2013, the foregoing was filed electronically with the Clerk of the Court to be served upon all parties by operation of the Court's electronic filing system.

                                        */s/ Dana Walker Tucker*
                                        Chief Counsel, Eastern Region